

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CRIMINAL ACTION NO.: 0:18-557-MGL-3 |
| | § | |
| GABRIEL L'AMBIANCE INGRAM, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

## I.    INTRODUCTION

The Court issued a text order denying Defendant Gabriel L'Ambiance Ingram's (Ingram) motion to dismiss counts 11, 12, 15, 16, and 21 of the second superseding indictment as unconstitutional under the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  This opinion will set forth that decision in greater detail, taking into careful consideration the motion, the response, the reply, the oral argument, the record, and the applicable law.

## II.    PROCEDURAL HISTORY

A grand jury indicted Ingram in the second superseding indictment of, as relevant here, two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and three counts of knowingly using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime in violation of 18 U.S.C. § 924(c).

After the Supreme Court issued its decision in *Bruen*, Ingram filed this motion to dismiss. The government responded and Ingram replied.  At the hearing, the Court heard argument from the government and Ingram and took the matter under advisement.  The Court, having been fully briefed on the relevant issues, issued a text order denying the motion.  Since that time, the Court held a trial in this matter, and a jury convicted Ingram of each count.

The Court will now expound upon its ruling denying Ingram's motion to dismiss.

### III.    STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12, the Court should dismiss criminal charges in an indictment "where there is an infirmity of law in the prosecution[,]" such as an unconstitutional statute.  *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012).

The Second Amendment to the United States Constitution provides "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amend. II.

In *Bruen*, the Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  142 S. Ct. at 2129–30.  Only after the government makes that showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."  *Id.* at 2130 (internal quotation marks omitted).

Ingram makes a facial challenge to Section 922(g) and Section 924(c).  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the

challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## IV.    DISCUSSION AND ANALYSIS

Ingram argues the conduct prohibited by both Section 922(g) and 924(c) are protected by the plain text of the Second Amendment and historically unregulated.  The government responds that Second Amendment protections fail to extend to non-law-abiding citizens and to unlawful activity.

The Court first takes a brief look at Second Amendment jurisprudence prior to *Bruen*.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that the Second Amendment protects the right of law-abiding citizens to possess a handgun in the home for lawful purposes, such as self-defense.

The majority recognized in dicta, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited[.]"  *Id.* at 626.  In other words, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.*

The Court emphasized that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons."  *Id.* at 626–27; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (same); *id.* at 767 (explaining that "individual self-defense is 'the *central component*' of the Second Amendment right" (emphasis in original) (quoting *Heller*, 554 U.S. at 599)).

Since *Heller*, most circuit courts, including the Fourth Circuit, developed a two-part test to assess Second Amendment claims.  *See, e.g.*, *Harley v. Wilkinson*, 988 F.3d 766 (4th Cir. 2021),

*abrogated by Bruen*, 142 S. Ct. at 2126–27 n.4 (employing the now invalid two-part test described below).

"At the first step, the government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood." *Bruen*, 142 S. Ct. at 2126 (internal quotation mark and alteration omitted). "If the government can prove that the regulated conduct falls beyond the Amendment's original scope," the circuit courts ended the analysis and concluded "the regulated activity is categorically unprotected." *Id.* (internal quotation mark omitted). If not, the courts proceeded to step two. *Id.*

At the second step, the courts considered "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (internal quotation mark omitted).

In *Bruen*, the Supreme Court held that this two-step approach was "one step too many," instead setting forth the standard this Court described above. *Id.* at 2127. As such, the Supreme Court recognized that the first step of the predominant circuit court framework was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* But, it determined *Heller*, and its successor, *McDonald*, fail to support the second step. *Id.* Instead, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

The Court agrees with the government that *Bruen* clarified and "reiterated[,]" rather than modified, the constitutional ruling in *Heller*, in the face of lower court rulings that failed to comport with its intended holding. *See id.* at 2129 ("Not only did *Heller* decline to engage in means-end scrutiny generally, but it also specifically ruled out the intermediate-scrutiny test that respondents and the United States now urge[d] [the Supreme Court] to adopt.").

In his concurrence in *Bruen*, Justice Kavanaugh echoes *Heller*'s and *McDonald*'s assurances that "[n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 2162 (Kavanaugh, J., concurring). To be sure, the language in *Heller* and *McDonald* to which Justice Kavanaugh cites is merely dicta. And, Kavanaugh's concurrence is merely persuasive. But, although this Court is "not bound by dicta or separate opinions of the Supreme Court[,]" *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005), it should "give great weight to Supreme Court dicta," *N.L.R.B. v. Bluefield Hosp. Co., LLC*, 821 F.3d 534, 541 n.6 (4th Cir. 2016).

This Court "cannot simply override a legal pronouncement endorsed by a majority of the Supreme Court, particularly when the supposed dicta is recent and not enfeebled by later statements." *Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (internal quotation marks and alterations omitted); *see also Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 282 (4th Cir. 2019) (explaining courts must give deference to dicta and separate opinions of the Supreme Court because "[r]espect for the rule of law demands nothing less: lower courts grappling with complex legal questions of first impression must give due weight to guidance from the Supreme Court, so as to ensure the consistent and uniform development and application of the law.").

To recap, similar discussion regarding felon-in-possession and comparable statutes appears in three different opinions: *Heller*, *McDonald*, and *Bruen*. By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment. This, coupled with the majority's focus in *Bruen* on the Second Amendment rights of "law-abiding citizens" throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights. *See Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two

ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects"); *id.* at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."). The Court has found no contradictory authority.

For these reasons, the Court denied the motion as to Ingram's Section 922(g) felon-in-possession charges. And, although the Supreme Court cases explained above fail to explicitly mention Section 924(c), the rationale also applies to that statute in equal or greater measure. *Heller* and its progeny emphasize that the enumerated list "presumptively lawful" regulatory measures is inexhaustive. *Heller*, 554 U.S. at 627 n.26. Therefore, because it prohibits the use of firearms by non-law-abiding citizens for unlawful purposes, such conduct is also unprotected by the Second Amendment. The Court thus denied the motion to dismiss as to those counts as well.

## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Ingram's motion to dismiss, ECF No. 1606, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 25th day of August, 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE